UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAVID MACK PHILLIPS,            )
                                )   No. CV-10-5135-CI
            Plaintiff,          )
                                )   ORDER DENYING PLAINTIFF'S
            v.                  )   MOTION FOR SUMMARY JUDGMENT
                                )   AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE, Commissioner )   MOTION FOR SUMMARY JUDGMENT
of Social Security,             )
                                )
            Defendant.          )
                                )
_____)

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 17, 20.) Attorney Thomas Andrew Bothwell represents David Mack Phillips (Plaintiff); Special Assistant United States Attorney StephanieLynn Fishkin Kiley represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 6.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and directs entry of judgment for Defendant.

### JURISDICTION

Plaintiff protectively filed for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on March 19, 2007. (Tr. 10, 104, 108.) He alleged disability due to attention deficit disorder (ADD) and "bronchial problems," with an onset of November 21, 2005. (Tr. 129.) His claim was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held in Kennewick,

1  Washington, on November 4, 2009.  ALJ Barbara Artuso presided by

2  video conference from Metairie, Louisiana.  (Tr. 10, 25-52.)

3  Plaintiff, who was represented by counsel, and vocational expert

4  (VE) Daniel R. McKinney appeared in person and testified.  The ALJ

5  denied benefits on March 26, 2010, and the Appeals Council denied

6  review.  (Tr. 10-20, 1-3.)  The instant matter is before this court

7  pursuant to 42 U.S.C. § 405(g).

8  **STANDARD OF REVIEW**

9      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

10  court set out the standard of review:

11          The decision of the Commissioner may be reversed only
        if it is not supported by substantial evidence or if it is
12      based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094,
        1097 (9th Cir. 1999).  Substantial evidence is defined as
13      being more than a mere scintilla, but less than a
        preponderance.  *Id.* at 1098.  Put another way, substantial
14      evidence is such relevant evidence as a reasonable mind
        might accept as adequate to support a conclusion.
15      *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the
        evidence is susceptible to more than one rational
16      interpretation, the court may not substitute its judgment
        for that of the Commissioner.  *Tackett*, 180 F.3d at 1097;
17      *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595,
        599 (9th Cir. 1999).

18

19          The ALJ is responsible for determining credibility,
        resolving conflicts in medical testimony, and resolving
20      ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
        Cir. 1995).  The ALJ's determinations of law are reviewed
21      *de novo*, although deference is owed to a reasonable
        construction of the applicable statutes.  *McNatt v. Apfel*,
        201 F.3d 1084, 1087 (9th Cir. 2000).

22

23      It is the role of the trier of fact, not this court, to resolve

24  conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence

25  supports more than one rational interpretation, the court may not

26  substitute its judgment for that of the Commissioner.  *Tackett*, 180

27  F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (citation omitted).

If a claimant cannot perform his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can

perform.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v.*
*Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984).   If no jobs exist
that a claimant can perform, he is disabled and eligible for
benefits.

### STATEMENT OF THE CASE

    The facts of the case are set forth in detail in the transcript
of proceedings and are briefly summarized here.   At the time of the
hearing, Plaintiff was 33 years old.   (Tr. 33.)   Plaintiff was 29
years old on November 21, 2005, his alleged onset date.     He
reported he is a high school graduate and attended some special
education classes throughout his time in school.   (Tr. 33.)   At the
time of the administrative hearing, Plaintiff was single and lived
in a home with his seven-year-old son.   (Tr. 33-34.)   His sole
source of income at the time was public assistance.   (Tr. 34.)
Plaintiff has past work experience as a bus driver, cook,
dishwasher, forklift operator, and automobile detailer.   (Tr. 45-
46.)   Plaintiff reported he last worked for a very short period of
time in 2006.   (Tr. 34-35.)   He testified he could no longer work
because he gets very winded easily and his legs and upper back cramp
up on him.   (Tr. 35-36.)

### ADMINISTRATIVE DECISION

    The ALJ found Plaintiff met the insured status requirements for
DIB purposes through June 30, 2009.   (Tr. 10.)   At step one of the
sequential evaluation process, the ALJ found Plaintiff had not
engaged in substantial gainful activity since November 21, 2005, the
alleged onset date.   (Tr. 12.)   At step two, she found Plaintiff had
severe impairments of major depressive disorder, attention deficit

disorder, cognitive disorder, NOS, personality disorder, chronic obstructive pulmonary disease, asthma, obstructive sleep apnea, and obesity.  (Tr. 12.)  At step three, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings).  (Tr. 13.)  The ALJ specifically considered Listings 12.02, 12.04 and 12.08.  (Tr. 13-14.)

At step four, the ALJ determined Plaintiff could perform sedentary exertional level work. (Tr. 14.)  However, Plaintiff's residual functional capacity (RFC) included the following limitations:

> [N]ever climbing ladders, ropes or scaffolds, only occasionally climbing ramps/stairs, stooping, kneeling, crouching and crawling, frequently balancing, avoiding concentrated exposure to extreme heat, fumes, odors, dusts, gases and poor ventilation, avoid all exposure to work place hazards such as dangerous machinery and unprotected heights, and being limited to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions, involving only occasional interaction with the general public, co-workers and supervisors.

(Tr. 14-15.)  After summarizing the medical record and Plaintiff's statements, the ALJ found Plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the final RFC determination.  (Tr. 15-18.)  Based on the RFC assessed and the VE's testimony, the ALJ found Plaintiff could not perform his past relevant work as a bus driver, cook, dishwasher, forklift operator and auto detailer.  (Tr. 18.)  However, at step five, based in part on the RFC and VE testimony, the ALJ found there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including assembly

1   occupations, production inspectors and checkers, and hand-
2   packer/packager occupations. (Tr. 19.) The ALJ concluded Plaintiff
3   had not been disabled since the alleged onset date and was therefore
4   ineligible for benefits under the Social Security Act. (Tr. 20.)

5                                **ISSUES**

6       The question is whether the ALJ's decision is supported by
7   substantial evidence and free of legal error. Plaintiff argues the
8   ALJ erred when she (1) improperly concluded that Plaintiff's
9   impairments did not meet or equal a Listings impairment at step
10  three; (2) rejected the opinions of Plaintiff's treating medical
11  provider; (3) rejected Plaintiff's testimony regarding the need for
12  recumbency; and (4) failed to identify specific jobs, available in
13  significant numbers consistent with Plaintiff's specific functional
14  limitations at step five. (ECF No. 18.) Defendant responds that
15  the Commissioner's decision is supported by substantial evidence and
16  free of legal error. (ECF No. 20.)

17                              **DISCUSSION**
18  **A.   Treating Physician's Opinions**

19      Plaintiff contends the ALJ erred by rejecting the opinions of
20  Plaintiff's treating medical provider, Roberto Valdez, Ph.D. (ECF
21  No. 18 at 13-15.) A treating physician's opinion is given special
22  weight because of his familiarity with the claimant and his physical
23  condition. *Fair v. Bowen,* 885 F.2d 597, 604-605 (9th Cir. 1989).
24  However, the treating physician's opinion is not "necessarily
25  conclusive as to either a physical condition or the ultimate issue
26  of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.
27  1989) (citations omitted). The ALJ cannot reject a treating

28

physician's opinion without setting forth "specific" and "legitimate" reasons supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ indicated that the opinion of Dr. Valdez was accorded great weight to the extent it was consistent with the ALJ's RFC findings. (Tr. 18.)  However, the ALJ specifically indicated that "Dr. Valdez's 2008 assessment overstated the claimant's mental limitations and was not consistent with his own medical records." (Tr. 18.)  Plaintiff asserts that the ALJ erred by discounting Dr. Valdez's 2008 assessment.

On October 13, 2008, Dr. Valdez filled out a psychological/psychiatric evaluation form. (Tr. 490-493.)  Dr. Valdez checked boxes indicating that Plaintiff had marked limitations on his ability to learn new tasks and to understand, remember and follow complex instructions and marked limitations on his ability to interact appropriately in public contacts and to respond appropriately to and tolerate the pressure and expectations of a normal work setting. (Tr. 492.)  As noted by the ALJ, these findings are not consistent with Dr. Valdez's own medical records. (Tr. 18.)

Dr. Valdez previously filled out a psychological/psychiatric evaluation form on March 14, 2007, indicating that Plaintiff had no marked functional limitations. (Tr. 289.)  During the time between the two exams, Plaintiff was taking medications for his psychological difficulties and reported that he was doing better with his moods and his problems with ADD. (Tr. 408.)  Furthermore, Dr. Valdez's treatment notes from September 2006 through May 2009

reveal that Plaintiff consistently characterized his depression and anxiety as mild and his concentration and memory as good to fair. (Tr. 16; 273-328; 524-546.)

Dr. Valdez's 2008 report is additionally inconsistent with other evidence of record. On January 26, 2007, on referral from Dr. Valdez (Tr. 291), Plaintiff's long-time treating physician, Meneleo T. Lilagan, M.D.,[1] evaluated Plaintiff for complaints of problems with his attention span and focus. (Tr. 411.) At that time, Dr. Lilagan prescribed Adderall for Plaintiff's ADD. (Tr. 411.) Dr. Lilagan had also previously prescribed medications for Plaintiff's complaints of anxiety and depression in August 2006. (Tr. 16; 415.) On May 4, 2007, Plaintiff reported to Dr. Lilagan that he continued to use Adderall for problems with focus and attention and Effexor for mood problems and that he was doing better with his moods and his problems with ADD.[2] (Tr. 408.) The ALJ also indicated that Dr. Valdez's 2008 assessment noted that Plaintiff's ADD impacts his

---

[1] The ALJ accorded significant weight to Dr. Lilagan's opinion. (Tr. 18.)

[2] The effectiveness of medication in alleviating pain and other symptoms is a relevant factor to consider in evaluating the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3). Moreover, impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006), *see also, Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

functioning skills when he is **_not_** taking medication.[3] (Tr. 16; 492).

On March 22, 2007, Dr. Lilagan completed a physical evaluation form and opined that Plaintiff was capable of performing work at the sedentary level.  (Tr. 337-340.)  Dr. Lilagan competed another physical evaluation form on October 28, 2008, and again opined that Plaintiff was capable of performing work at the sedentary level. (Tr. 496-499.)  Dr. Lilagan did not indicate on either occasion that Plaintiff had marked restrictions on his ability to perform sedentary work.  Although Plaintiff complained to Dr. Lilagan of shortness of breath and the inability to walk a block without resting on January 13, 2009, Dr. Lilagan indicated that, despite these ongoing issues, Plaintiff continued to smoke and did not follow through with the doctor's advice to see a pulmonologist.[4]

---

[3] As noted by Defendant, Dr. Lilagan's treatment notes corroborate that Plaintiff's mental impairments were manageable when he took his medication.  (Tr. 408) (seven months after receiving medications from Dr. Lilagan, Plaintiff reported his moods, concentration, and focus were improved); (Tr. 475) (November 2007 examination note indicates Plaintiff had not taken medication for some time and expressed interest in restarting because it was effective (Tr. 476) (October 2007 examination note indicates Plaintiff reported the use of Adderall made him more focused). (ECF No. 20 at 14-15.)

[4] Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

(Tr. 15-16; 558.)  Plaintiff was advised to see a pulmonologist, discontinue smoking, and engage in physical activities to lose weight.  (Tr. 15-16; 558.)

Also inconsistent with Dr. Valdez's 2008 assessed marked limitations is Plaintiff's own report of activities of daily living and social functioning.  As noted by the ALJ, Plaintiff cares for his young son largely unassisted, lives alone and is solely responsible for the household upkeep, takes his son outside, attends school events, walks his son to the bus stop, prepares the meals in his home, launders the clothes, cleans the house, shops for groceries, pays the bills, attends appointments, and takes his medication unassisted.  (Tr. 13-14; 18; 33; 36-37.)

Based on the foregoing, the undersigned finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for finding that Dr. Valdez's 2008 assessment overstated Plaintiff's mental limitations.  (Tr. 18.)

Plaintiff additionally argues that the ALJ erred by failing to give deference to Dr. Valdez's GAF scores.  (ECF No. 18 at 14.)  In November 2008 and February and March 2009, Dr. Valdez gave Plaintiff a GAF score of 48.[5]  (Tr. 533; 538; 543.)  Dr. Valdez also assessed Plaintiff with GAF scores of 60 with a previous GAF of 55 in June 2007, 50 in March 2009, and 49-55 in May 2009.  (Tr. 510, 525; 528.)

The GAF scale is a common tool for tracking and evaluating the overall psychological functioning of a patient and is used to

---

[5]  A GAF of 50-41 reflects serious symptoms or serious impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

1   determine an individual's need for treatment.  *Vargas v. Lambert*,
2   159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  As evidenced by Plaintiff's
3   scores, a GAF score can fluctuate depending on the current
4   circumstances.  Because a GAF score measures situational functioning
5   in the context of treatment design, the Commissioner has explicitly
6   declined to endorse the GAF scale for use in the Social Security
7   disability programs.  The Commissioner has determined that GAF
8   scores have no direct correlation to the severity requirements of
9   the mental disorder listing.  *See* 65 Fed.Reg. 50746, 50764-50765
10  (Aug. 21, 2000).

11      In any event, as discussed above, the evidence of record does
12  not reflect that Plaintiff has a marked limitation or serious
13  impairment with respect to his mental functioning.  The ALJ properly
14  accorded little weight to Dr. Valdez's GAF scores.

15  **B.   Step Three: Listing 12.04 (Affective Disorder)**

16      Plaintiff contends that the ALJ erred at step three when she
17  concluded that Plaintiff's impairments did not meet Listing 12.04
18  (Affective Disorder).  (ECF No. 18 at 11-13.)

19      The Commissioner has a list of impairments (Listings) to
20  describe various illnesses and abnormalities, categorized by the
21  various body systems, that are considered severe enough to prevent
22  substantial gainful activity "regardless of age, education or work
23  experience."  20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S.
24  521, 529-530 (1990).  At step three, it is a claimant's burden to
25  present objective medical evidence proving he or she meets or equals
26  an identified Listing.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th
27  Cir. 1995).  To show he meets a Listing, the claimant must establish

28

that he meets each criterium of the listed impairment relevant to his claim. *Sullivan*, 493 U.S. at 531. If a claimant's impairments do not meet the Listing exactly, a finding of "disabled" may still be appropriate if his impairments in combination "equal" a Listing. To prove that he "equals" a Listing, "a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Tackett*, 180 F.3d at 1099 (*quoting* 20 C.F.R. § 404.1526). Evidence of significant objective medical findings, along with the presentation of a cogent argument, must be presented to raise presumption of disability at step three. *See, e.g., Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990).

Pursuant to Listing 12.04, a plaintiff is disabled if he has an affective disorder which is characterized "by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.04. "The required level of severity for these disorders is met when the requirements in both [paragraph] A and B [of the regulation] are satisfied, or when the requirements in [paragraph] C are satisfied." *Id*. Paragraph B requires Plaintiff to have "marked" limitations in two of the following categories: activities of daily living, social functioning, concentration, persistence and pace, or repeated episodes of decompensation. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.04.

It is Plaintiff's contention that his severe impairments satisfy the requirements of paragraph B because he has a marked

restriction in activities of daily living, a marked difficulty in maintaining social functioning and a marked difficulty in maintaining concentration, persistence or pace. (ECF No. 18 at 12-13; ECF No. 21 at 2.)  The undersigned does not agree.

As discussed above, the ALJ provided specific and legitimate reasons supported by substantial evidence for finding that Dr. Valdez's 2008 assessment overstated Plaintiff's mental limitations. The ALJ thus properly rejected the conclusions that Plaintiff had marked limitations on his ability to learn new tasks, to understand, remember and follow complex instructions and in his ability to interact appropriately in public, and respond appropriately to the pressure and expectations of a normal work setting. (Tr. 492.)  The evidence of record does not reflect that Plaintiff has marked limitations in activities of daily living, maintaining social functioning or maintaining concentration, persistence or pace.

The criteria of paragraph B of Listing 12.04 is not satisfied, and Plaintiff has thus not met his burden of demonstrating that his mental impairments meet or equal Listing 12.04.  The ALJ did not err in her step three findings.

C.   **Plaintiff's Credibility**

Plaintiff argues the ALJ also erred when she rejected Plaintiff's testimony regarding a need to lie down during the day.

When the ALJ finds a claimant's symptom allegations are not credible, if there is no affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  If the ALJ's credibility findings are supported by

substantial evidence in the record, "the court may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1999) ("Credibility determinations are the province of the ALJ.").

The ALJ determined Plaintiff's allegation that he sometimes must lie down throughout the day (Tr. 42-43) was not supported by the medical evidence of record and there were no reports contained in the medical record of Plaintiff having difficulty with sitting. (Tr. 18.) Plaintiff argues that Dr. Lilagan's notes show Plaintiff's difficulty with sitting and it is "clearly erroneous to presume that an extreme level of obesity could not require a need to lie down during the day." (ECF No. 18 at 15-16.) The undersigned does not agree.

First, a review of the administrative hearing transcript does not reveal a claim by Plaintiff that he has a *need* to lie down during the day. Plaintiff testified that "most of the time, I ***like*** to lay [sic] down on the couch because my body hurts. And that's maybe one or two times a day." (Tr. 42) (emphasis added). Upon further questioning, Plaintiff stated he lies down maybe two or three times a day for 15 to 20 minutes each time. (Tr. 43.) Plaintiff, however, has never explicitly stated that lying down during the day is a necessity.

With respect to Plaintiff's argument regarding the correlation between extreme obesity and the need to lie down, Plaintiff offers only speculation in support of this position. (ECF No. 20 at 19.) As determined by the ALJ, the record does not reflect any indication that Plaintiff had difficulty sitting. (Tr. 18.) Other than a June

26, 2009, report from Dr. Lilagan, which reflected Plaintiff having problems with external hemorrhoids (Tr. 551), there are no medical reports of record documenting difficulty with sitting. Significantly, Dr. Lilagan opined that Plaintiff was capable of performing work at the sedentary level on March 22, 2007, (Tr. 337-340) and on October 28, 2008. (Tr. 496-499.)   There is no medical evidence contradicting Dr. Lilagan's opinion in this regard.

The ALJ's reasons for rejecting Plaintiff's assertion of a need to lie down throughout the day are legally sufficient and supported by the evidence of record.

**D.   Step Five Determination**

Plaintiff next argues that the ALJ erred, at step five, by presenting an incomplete hypothetical to the VE and by failing to identify specific jobs, available in significant numbers, that Plaintiff could perform consistent with his specific functional limitations.

The ALJ may rely on vocational expert testimony if the hypothetical presented to the vocational expert includes all functional limitations supported by the record and found credible by the ALJ. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ is not obliged to accept the limitations presented by Plaintiff's representative. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-1165 (9th Cir. 2001); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).   It is the province of the ALJ to make a final determination regarding Plaintiff's RFC and disability.   The regulations are clear that "no special significance" is given to a medical opinion regarding these issues. 20 C.F.R §§ 404.1527(d),

1  416.927(d).

2      As discussed above, the ALJ's reasons for finding that Dr.
3  Valdez's 2008 assessment overstated Plaintiff's mental limitations
4  and for rejecting Plaintiff's assertion of a need to lie down
5  throughout the day are legally sufficient and supported by
6  substantial evidence in the record.    Therefore, the ALJ was not
7  obliged to include those restrictions in her final RFC or
8  hypothetical to the VE.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th
9  Cir. 2001).    The hypothetical presented to the VE and relied upon by
10 the ALJ was proper because it reflects the final RFC determination,
11 which is supported by substantial evidence and is a reasonable
12 interpretation of the evidence of record.  *Id.* at 1163-64
13 (hypothetical must be based on "medical assumptions supported by
14 substantial evidence").

15     Plaintiff also argues that the ALJ erred by failing to identify
16 specific jobs, available in significant numbers, Plaintiff could
17 perform consistent with his specific functional limitations.
18 However, review of the hearing transcript shows the ALJ asked the VE
19 whether there were jobs in the national economy that an individual
20 with Plaintiff's background, characteristics, and assessed
21 limitations could perform.  (Tr. 47.)  The VE testified that work
22 existed in significant numbers in the national economy that the
23 hypothetical individual identified by the ALJ could perform and
24 specified the number of jobs available in the national economy.
25 (Tr. 47.)  He opined that examples of jobs that "a person with this
26 profile" could perform included assembly occupations, production
27 inspectors and checkers, and hand packers and packagers.  (Tr. 47-
28

48.)   The VE explained he included only light work jobs in his testimony that had a sit/stand option and required no lifting over 10 pounds, "so that the work could be performed at a sedentary level at the discretion of the worker."[6] (Tr. 47.)

Since the specific jobs identified by the VE can be performed at the sedentary level by an individual with limitations identified in the final RFC, ALJ did not err by relying on the VE testimony at step five. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In her decision, the ALJ specifically enumerated the occupations identified by the VE as suitable for Plaintiff. (Tr. 19.)  The ALJ's conclusion that Plaintiff retains the capacity to perform other work that exists in significant numbers in the national economy is supported by substantial evidence and without legal error.

### CONCLUSION

The ALJ did not err at step three or step five.  Her findings and conclusions are supported by substantial evidence and free of legal error.  Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(ECF No. 17)** is **DENIED**;

_____

[6] Although light level work typically involves a good deal of walking or standing, it may also involve sitting most of the time. 20 C.F.R. §§ 404.1567(b), 416.967(b). Sedentary work involves lifting no more than ten pounds at a time and sitting. 20 C.F.R. §§ 404.1567(a), 416.967(a).  Thus, the light jobs identified with a sit/stand option requiring lifting no more than 10 pounds reasonably could be performed at a sedentary level at Plaintiff's discretion.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

1        2.   Defendant's Motion for Summary Judgment **(ECF No. 20)** is

2 **GRANTED;**

3        The District Court Executive is directed to file this Order and

4 provide a copy to counsel for Plaintiff and Defendant.  The file

5 shall be closed and judgment entered for Defendant.

6        DATED July 13, 2012.

7

8                          S/ CYNTHIA IMBROGNO
                    UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18